APRIL TERM, 1860. 105

Wheeler *v.* City of Chicago. Bonner *v.* Same.

WILLIAM WHEELER, Plaintiff in Error, *v.* THE CITY OF CHICAGO, Defendant in Error; and
ROSALIE A. BONNER, Plaintiff in Error, *v.* THE SAME, Defendant in Error.

ERROR TO COOK COUNTY COURT OF COMMON PLEAS.

An action may be maintained upon an implied assumpsit by the city of Chicago, to collect and pay over the assessment awarded property holders, for the opening of a street.

The word, "*shall*," in a statute, may be held to be used, as directory merely, when no advantage is lost, no right destroyed or benefit sacrificed, either to the public or individuals, by such a construction.

This rule applied to the word *shall,* in the last sentence of the tenth section of the sixth chapter of the charter of the city of Chicago.

THIS was an action of assumpsit, brought by the plaintiff in error against the defendant in error, in the Cook County Court of Common Pleas, (now Superior Court of Chicago,) to recover of the defendant the sum of fifteen thousand five hundred and forty-five dollars, which the plaintiff claims that the city owes him for damages which commissioners, appointed by the city of Chicago to estimate the benefits and damages to the owners of property by the opening and extending of South LaSalle street, from its present termination at Madison street, to Jackson street, awarded him.

The declaration sets out, that on the 15th day of October, 1855, and until the time of the appropriation for street purposes, the plaintiff was the owner and seized in fee of the west thirty feet of sub-lot 8, and all of sub-lot 7, in lots 1 and 2, in block 118, in the school section addition to Chicago.

On 15th October, 1855, the common council ordered a survey to be made for the extension of South LaSalle street, from its terminus on Madison street, to Jackson street.

On 20th October, 1855, notice was given of the intention of the city to take and appropriate the land necessary for the extension of said street. This notice was published ten days.

January 10, 1856, the common council appointed commissioners to ascertain and *assess* the damages and recompense due the owners of land, which might be taken *on the real estate* of the persons *benefited*, in proportion, as nearly as may be, to the benefits resulting to each.

January 16, 1856, the commissioners were duly sworn to execute their duties according to the best of their ability, etc. That before entering on their duties, they gave ten days' notice, to all persons interested, of the time and place of their meeting, for the purpose of viewing the premises and making their assessment; which notice was published ten days in the corporation

newspaper.   The declaration then sets out, that they proceeded to make the assessment, and "did determine and appraise to the owner and owners the value of the real estate appropriated, after making due allowance for benefits, etc.   That the commissioners, did in all things comply with the law, and charter, and ordinances of said city, in regard to said assessment, and the opening of said street, and did *describe* the real estate upon which *their assessments were made.*"   And after having completed and signed said assessment, did, within the extended time allowed them by the said common council, in which to complete and return their said assessment, on the 5th day of April, 1856, return their said assessment to the common council.

Ten days' notice was then given by the clerk of the return of the assessment roll, commencing on the 8th day of April, 1856.

June 10th, 1856, the assessment roll was confirmed, in and by which the plaintiff claims that he is entitled to have and receive from the city of Chicago the sum of $15,545, as damages which the commissioners had awarded him.   The plaintiff then avers, " that it thereupon then and there became and was the duty of the said defendants to proceed immediately, and with diligence, to collect money by the means provided by their charter, sufficient to pay the aforesaid assessment and award, as aforesaid assessed and awarded to said plaintiff, and confirmed as aforesaid, and to pay the same to said plaintiff within a reasonable time ; and the said defendant, in consideration thereof, then and there undertook and faithfully promised the said plaintiff to faithfully and diligently perform their said duty in all respects in this behalf.   Yet the said defendants, disregarding their said undertaking and promise in the premises, did not within a reasonable time pay to the said plaintiff the said award and assessment, etc., but have for an unreasonable time, to wit, for the space of two years and eight months, wholly failed and neglected to pay the said plaintiff the said sum of money so appraised, awarded and allowed to him," etc.

These constitute the main allegations of the plaintiff's declaration.

To this declaration, the defendant in the court below filed a general demurrer, which was sustained by the court.   The plaintiff stood by his demurrer, and the case is now brought to this court by a writ of error.

The proceedings were alike, in the foregoing cases.

FARWELL, SMITH & THOMAS, for Plaintiff Wheeler.

ARNOLD, LAY & GREGORY, for Plaintiffs Bonner *et al.*

E. ANTHONY, for Defendant in Error.

CATON, C. J. We have no difficulty in saying that an action may be maintained upon the implied assumpsit of the city, to collect the assessment and to pay the amount awarded to property holders, for opening a street; but the most embarrassing question in these cases is to determine whether these declarations show that the proceedings were regular for opening this street, and the levy of this assessment, and this depends upon the construction to be given to the word *shall*, in the last sentence of the tenth section of the sixth chapter of the city charter. The sentence is this: " when completed, the commissioners shall sign and return the same to the common council, within forty days of their appointment." In this case, the common council extended the time for the return of the assessment roll beyond the forty days, and within the extended time, the return was made. If this provision was designed by the legislature to be imperative, then the return made after the time specified had expired, was illegal, and the assessment was void; and the whole proceeding fell with it; and if that was so, no right accrued to the city to open the street, and consequently, no implied assumpsit arose, that it would collect and pay over the assessment. But if the return was in time, then the right vested in the city to open the street, and the duty devolved upon it to collect the assessment within the time authorized by law, and to pay it over to the parties to whom it was awarded by the commissioners.

We entirely concur in the remark, that this statute, under which the property of the citizen is to be taken from him for the use of the public, is to be strictly construed, and must be complied with in all its essential provisions, or the whole proceeding is void; but the inquiry still occurs, what is the provision of this statute? What did the legislature mean by it? In other words, is this enactment imperative, or permissive or directory? The word *may* is construed to mean shall, whenever the rights of the public, or third persons, depend upon the exercise of the power or the performance of the duty to which it refers. And so, on the other hand, the word *shall* may be held to be merely directory, when no advantage is lost, when no right is destroyed, when no benefit is sacrificed, either to the public or to any individual, by giving it that construction; but if any right to any one depends upon giving the word an imperative construction, the presumption is, that the word was used in reference to such right or benefit. But where no right or benefit to any one depends upon the imperative use of the word, it may be held to be directory merely.

The general revenue law prescribing the time within which the assessment should be returned, we held to be imperative,

and that an assessment returned after the time appointed by the law, was absolutely void, and the reason for so holding was, that the person assessed " would lose the benefit of an appeal from the assessment ; for the statute expressly provides that no application to reduce the valuation shall be made after the June term of the court." And the same reason was assigned for a similar ruling in the case in 7 Conn., referred to in the opinion of the court in that case. But in *Pond* v. *Negus*, 3 Mass., the question arose upon an assessment which was made after the day fixed by the law, and as nobody could have derived any advantage from the assessment having been made within the time, and there being no negative words in the statute, it was construed as directory, and an assessment made subsequently, was held good. The court said, " And although the assessors are directed to assess the tax within thirty days after the certificate, yet there are no negative words restraining them from making the assessment afterwards ; and accidents might happen which would defeat the authority if it could not be exercised after the thirty days." These remarks are pertinent to the case at bar. So in *Colt* v. *Eves*, 12 Conn. 243. There the statute required jurors to be selected on a particular day, and the court held that they might be selected on a subsequent day. The court held that the duty which was imposed to select the jury, was imperative, but that the time fixed was directory. In commenting upon the case in 7 Conn., above referred to, the court said, " The principle there assumed seems to be that where the object contemplated by the legislature could not be carried into effect by another construction, then the time prescribed must be considered as imperative, but where there is nothing to indicate that the exact time was essential, it should be considered as directory."

These cases serve as examples of the two classes of decisions which are very numerous, and leave the principle on which they depend as clearly defined as almost any other rule for construing statutes. By the application of this rule to this statute, it was very clearly not the intention of the legislature to make the time specified for the return of the assessment roll indispensable to the validity of the proceedings. There are no negative words used, declaring that the functions of the commissioners shall cease after the expiration of the forty days, or that they shall not make their return after that time. Nor have we been able to discover the least right, benefit, or advantage, which the property owner could derive from having the return made within that time, and not after. No time is limited, and made dependent on that time, within which the owner of the property may apply to have the assessment reviewed or corrected. The next

section requires the clerk to give ten days' notice that the assessment has been returned, specifying a day when objections may be made to the assessment, before the common council, by parties interested, which hearing may be adjourned from day to day, and the common council is empowered in its discretion to confirm or annul the assessment altogether, or to refer it back to the same commissioners, or to others, to be by them appointed. As the property owner has the same time and opportunity to prepare himself to object to the assessment, and have it corrected, whether the return be made before or after the expiration of the forty days, the case differs from that of *Chesnut* v. *Marsh*, at the very point on which that case turned, nor is there any other portion of the charter which we have discovered, bringing it within the principle of that case, which is the well recognized rule in all the books.

This is the only objection which has been pointed out as appearing on the face of these declarations, to the validity of this assessment. If there is anything else which will render the proceeding void, and show that the city acquired no right to the land proposed to be taken for the street, that can be shown in the defendant's pleas. We think the demurrers should have been overruled. The judgments must be reversed and the causes remanded, with leave to the defendant to plead.

*Judgments reversed.*